FILED

MAR 0 8 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                    )    Case No. 11-16468-B-11
                                         )
Manuel R. Santos and                     )    DC No. DLF-1
Maria J. Santos,                         )
                                         )
                Debtors.                 )
_____)

## MEMORANDUM DECISION REGARDING APPLICATION FOR COMPENSATION

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Michael A. Dias, Esq., of the Dias Law Firm, Inc., appeared as special counsel on behalf of the debtors.

Craig B. Fry, Esq., of Lang, Richert & Patch, appeared on behalf of the creditor, Farm Credit West, PCA and Farm Credit West, FLCA.

Gregory Powell, Esq., appeared on behalf of August B. Landis, Acting United States Trustee.

Before the court is an application for approval and payment of interim professional fees filed by the Dias Law Firm for services rendered as special counsel for the debtors, Manuel and Maria Santos (the "Debtors"). For the reasons set forth below, the application will be approved in a reduced amount.

This memorandum decision contains findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and

9014(c).[1]  The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, 11 U.S.C. § 523, and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact**.

On June 3, 2011, the Debtors filed a petition under chapter 11.  On September 12, 2011, this court approved employment of the Dias Law Firm to serve as the Debtors' special counsel ("Special Counsel").  The Debtors are dairy farmers.  They employed Special Counsel to negotiate multiple leases and to work on other nonbankruptcy transactional matters.  Michael Dias ("Dias") was the only attorney at the Dias Law Firm who worked on this case.

Special Counsel now submits an interim application for approval and payment of the fees it incurred for legal services rendered between August 17 and December 7, 2011 ("Fee Application").  Specifically, Special Counsel requests payment in the amount of $10,384.50 based on 48.3 hours billed at Dias's billing rate of $215.00 an hour.  It has not requested reimbursement of any expenses in its Fee Application.  Attached to the Fee Application as an exhibit is a computerized printout of 32 separate time entries.  Two out of the 32 entries are for 2.2 hours (Entry No. 275552 on September, 30, 2011) and for 0.6 hours (Entry No. 275549 on October 28, 2011).  The other 30 entries are billed in even increments of 0.5 hours, or 30 minutes, with time entries ranging from 0.5 to 4.0 hours.

---

[1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated after October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. 109-8, 119 Stat. 23 (enacted April 20, 2005).

1    Also, several of Special Counsel's billing entries show a practice of

2    "lumping," such that multiple, separable tasks performed by Dias are

3    nevertheless included within a single billing entry.  Three notable examples

4    of "lumping" in the Fee Application are found in Entries No. 271934 on

5    September 19 (billing two hours), No. 272504 on September 28 (billing

6    four hours), and No. 272687 on September 29, 2011 (billing three hours).

7    The first of these three entries provides the following description of the

8    services rendered:

9        Telephone conference with Attorney Bettencourt regarding
         lease modifications and contact with client; review e mail
10       from client forwarding e mail from Riley regarding deadline
         and information on lease and tax consequences; conference
11       with client regarding counter offer, e mail from Walter and
         residence lease agreement; conference with Attorney
12       Bettencourt regarding counter offer to his counter offer
         deadline to present leases to court; conference with client
13       regarding further offers and negotiations; review dairy lease
         agreement and residential lease agreement regarding rental
14       payments and WQCB.

15   The second entry states the following:

16       Preparation of First Amended Farm Lease Agreement;
         preparation of First Amended Residential Lease Agreement;
17       preparation of First Amended Dairy Lease Agreement;
         conference with clients to discuss review of farm lease,
18       amended dairy lease and amended residential lease and
         modifications; preparation of correspondence to Attorney
19       Bettencourt forwarding Lease Agreements for review and
         comment.

20

21   Lastly, the third entry's description provides:

22
         Finalize dairy lease, farm lease and residential lease;
23       preparation of e mail to Attorney Bettencourt forwarding
         same; review e mail from Bettencourt requesting merger of
24       old lease and new lease for side by side comparison; merge
         same; preparation of e mail to Attorney Bettencourt
25       forwarding merged lease agreements; preparation of e mail to
         Riley regarding status of lease agreements; review response
26       regarding deadline on September 30th at noon; preparation of
         e mail to Attorney Bettencourt regarding deadline; telephone
27       conversation with Attorney Bettencourt; regarding revisions
         to lease and review for approval and finalizing; review
28       revised Amended Dairy Lease; forward to Attorney Dias and

3

1    client for review; conference with Josh regarding review of
     dairy lease and requested changes to recitals, rent, use and
2    standard agreements, attorney fees, binding court approval,
     etc.; review redline version of dairy lease; review
3    correspondence from Attorney Bettencourt forwarding farm
     and residential attached.

4

5    In support of its Fee Application, Special Counsel also filed a

6    supplemental declaration by Dias. Dias states that the computerized billing

7    entries submitted to the court are based on his own handwritten entries,

8    which were later transferred to the computer by the firm's account manager.

9    According to Dias, these handwritten billing entries are no longer available

10   as they have been destroyed, so they could not and were not attached with

11   the Fee Application. Further, Dias states that the computerized billing

12   entries have already been adjusted to account for any non-client-related

13   interruptions. Dias performs this billing practice because "most [of Special

14   Counsel's] clients hate to be charged for every little time increment." He

15   "give[s] the benefit of breaks, interrupting phone calls, other non client

16   issues to the client and [has] systematically reduced [his] time most often to

17   even increments by the quarter hour."

18   **Analysis and Conclusions of Law.**

19   Section 330 of the Bankruptcy Code governs compensation to

20   professionals. It provides, in pertinent part, that the court may award

21   "reasonable compensation for actual, necessary services rendered" by such

22   professionals. § 330(a)(1)(A). In the Ninth Circuit, the customary method

23   for determining the award of reasonable attorney's fees is by the "lodestar"

24   method. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996),

25   *amended*, 108 F.3d 981 (9th Cir. 1997). "The 'lodestar' is calculated by

26   multiplying the number of hours the prevailing party reasonably expended

27   on the litigation by a reasonable hourly rate." *Id.* (citation omitted). Use of

28   the "lodestar" method though is not mandatory. *See Unsecured Creditors'*

4

1   *Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 961 (9th Cir. 1991)

2   (concluding that bankruptcy court's use of alternative formula rather than

3   lodestar method was not abuse of discretion).

4        The process of determining fees, however, must begin with the fee

5   application itself. Federal Rule of Bankruptcy Procedure 2016 provides,

6   "An entity seeking interim or final compensation for services . . . from the

7   estate shall file an application setting forth a *detailed* statement of (1) the

8   services rendered, time expended and expenses incurred, and (2) the

9   amounts requested." FED. R. BANKR. P. 2016(a) (emphasis added). "These

10   *detailed* applications establish the 'actual,' while an accompanying

11   narrative explanation of the 'how' and 'why' establish the 'necessary.'" *In*

12   *re Wildman*, 72 B.R 700, 707 (Bankr. N.D. Ill. 1987) (emphasis in original).

13   For a fee application, "the fee applicant bears the burden of establishing

14   entitlement to an award and documenting the appropriate hours expended

15   and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

16        Regardless of whether an objection to a fee application is raised, the

17   bankruptcy court has the independent duty to "scrutinize the application in

18   the interest of protecting the integrity of the bankruptcy system." *In re*

19   *Pruitt*, 319 B.R. 636, 638 (Bankr. S.D. Cal. 2004) (citation omitted).

20   "[D]etailed fee applications enable the bankruptcy court to fulfill its

21   obligation to examine carefully the requested compensation in order to

22   ensure that the claimed expenses are justified." *In re Nucorp Energy, Inc.*,

23   764 F.2d 655, 658 (9th Cir. 1985). This also provides the court with "*sua*

24   *sponte* authority to 'award compensation that is less than the amount of

25   compensation that is requested.'" *In re Eliapo*, 468 F.3d 592, 597 (9th Cir.

26   2006) (quoting § 330(a)(2)). Given this authority, "a court should only

27   award fees *to the level* that has been proven to be actual, necessary and

28   reasonable. Any less requirement would make the applicant's burden of

1  proof a mere shell." *In re Roderick Timber Co.*, 185 B.R. 601, 606 (B.A.P.

2  9th Cir. 1995) (emphasis in original) (citation omitted) (internal quotation

3  marks omitted).

4  **Special Counsel's Billing Practice**.

5          Though no party has objected to the Fee Application, the court on its

6  own takes issue with some of Special Counsel's billing practices. First, a

7  number of Special Counsel's billing entries "lump" together several tasks

8  within a single billing entry, making it difficult for the court to properly

9  evaluate the actual time spent on each mentioned task. For example, the

10  three-hour entry for September 29, 2011 (No. 272687) describes a variety of

11  separable tasks performed by Dias, such as finalizing three separate leases,

12  preparing several different emails to be sent to several different people,

13  participating in a phone conversation and then a separate conference, as

14  well as reviewing emails and other legal documents. Based on this entry's

15  dense description, within the billed three-hour period, the court has no idea

16  how much time was actually spent on each of these tasks and whether the

17  aggregate amount of time spent was cumulatively three hours. Although

18  Special Counsel was not required to separate out each individual task into

19  its own billing entry, Special Counsel nevertheless should have divided this

20  entry into multiple ones to provide the court with a more accurate and less

21  oversimplified picture of the time actually expended by Special Counsel for

22  the various services rendered to the Debtors. By providing billing entries in

23  this "lumped" form, Special Counsel is asking the court to make a

24  generalized determination that the time expended was reasonable when the

25  law requires more specificity.

26          Second, the court must address the time increments utilized by

27  Special Counsel. All but two out of the 32 entries are billed in increments

28  of 0.5 hours, rather than the customary 0.1-hour (or six-minute) increments.

1    Given that Special Counsel billed most of its time in minimum 30-minute

2    increments, the Fee Application appears to represent only an estimation of

3    the time expended, rather than the actual time.

4         On both issues of lumping and time increments, the court relies on

5    the guidelines promulgated by the Executive Office of the United States

6    Trustee, entitled "Guidelines for Reviewing Applications for Compensation

7    and Reimbursement of Expenses Filed Under 11 U.S.C. § 330" (the

8    "Guidelines). *See* 28 U.S.C. § 586(a)(3)(A); 28 C.F.R. pt. 58, app. A. The

9    Guidelines provide, in pertinent part, that

10        Time entries should be kept contemporaneously with the
          services rendered in *time periods of tenths of an hour*.
11        Services should be noted in detail and *not combined or*
          *"lumped" together*, with each service showing a separate time
12        entry; however, tasks performed in a project which total a de
          minimis amount of time can be combined or lumped together
13        if they do not exceed .5 hours on a daily aggregate.

14    *Id.* app. A, sec. (b)(4)(v) (emphasis added).  While the Guidelines

15    themselves do not carry the force of law, the court nevertheless grants them

16    substantial deference in that "adherence to [the Guidelines] will produce a

17    fee application sufficiently detailed to be reviewable and to meet the

18    requirements of Rule 2016(a)." 1 COLLIER ON BANKRUPTCY ¶ 6.27[1], at 6-

19    71 (16th ed. 2011).

20        Using these Guidelines, the court finds that the Fee Application lacks

21    sufficient detail to comply with § 330(a)(1)(A) and Rule 2016(a). The

22    practice of "lumping" prevents the court from evaluating the actual time

23    expended for each task performed. *See In re Ginji Corp.*, 117 B.R. 983,

24    989 (Bankr. D. Nev. 1990). Also, Special Counsel's use of 0.5-hour

25    increments hinders the court's ability to determine the actual time expended

26    since such a large time increment may represent an inaccurate, overinflated

27    estimation of time. *See In re Four Star Terminals, Inc.*, 42 B.R. 419, 426

28    n.1 (Bankr. D. Alaska 1984) (noting that short phone calls should be

7

1   recorded in minimum increments of 0.1 hours, rather than 0.25-hour

2   increments); *see also In re Stoecker*, 114 B.R. 965, 976 (Bankr. N.D. Ill.

3   1990) (providing that billing in 0.25-hour increments violates Rule

4   2016(a)).

5        In his supplemental declaration, Dias explains that the billing entries

6   submitted to the court represent downwardly adjusted entries that had taken

7   into account unrelated interruptions and that the original handwritten entries

8   with the actual expended times had unfortunately been destroyed. Dias

9   states that he does it this way since his clients dislike being charged for

10  "every little time increment." Dias's explanation though is unpersuasive. It

11  is the court, not the client, who must approve the fees requested in a

12  professional's fee application. The court must review that application based

13  on the standards presented in the Bankruptcy Code and Rules. It is the fee

14  applicant's burden to submit an adequately detailed fee application.

15  Without detailed time records and properly separated entries, the court lacks

16  any objective basis for determining an award of fees. *See Wildman*, 72 B.R.

17  at 708. In this case, Special Counsel has failed to meet its burden of

18  establishing its entitlement to the requested fee award of $10,384.50.

19       **The Court's Adjustments.**

20       In light of the deficiencies in the Fee Application, the court finds it

21  necessary to make adjustments to the fees requested by Special Counsel. In

22  reducing the fees, the court must "provide a concise but clear explanation of

23  its reason for the fee award," *Hensley*, 461 U.S. at 437, and must also

24  "articulate with sufficient clarity the manner in which it makes its

25  determination." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th

26  Cir. 1986) (citation omitted), *amended*, 808 F.2d 1373 (9th Cir. 1987). This

27  does not require the court to include detailed calculations in its explanation,

28  but "something more than a bald, unsupported amount is necessary. While

1   the [court] need not set forth in exhaustive detail the method of calculating

2   an attorney's fee award, at the very least [it] must set forth the number of

3   hours compensated and the hourly rate applied." *Id.* at 1211 n.3.

4        Other than the entries for September 30, billing 2.2 hours, and for

5   October 28, billing 0.6 hours, the court will decrease the remaining 30

6   billing entries by 0.4 hours, such that an entry for 0.5 hours will now

7   become 0.1 hours and an entry for 1.0 hours will now become 0.6 hours.[2]

8   This uniform, downward adjustment is intended to represent the smallest

9   increment of actual time expended within a 0.5-hour time frame given that

10   Special Counsel billed in 0.5-hour increments and that the court has no idea

11   whether the services rendered covered the entire 0.5-hour time frame or

12   some lesser amount of time. Some of Special Counsel's billing entries may

13   represent an actual half- or full-hour of rendered legal services, but the

14   court has no evidence of that being the case since the original handwritten

15   entries no longer exist.

16        While Special Counsel submitted a supplemental declaration

17   explaining its billing practices, the court finds that explanation to simply be

18   inadequate. Special Counsel has only provided that it has *generally*

19   adjusted the billing times in its entries. It has failed to *specifically* set forth

20   which entries were subject to an adjustment and how much of an adjustment

21   was made for any such entry. Without the original handwritten entries, the

22   court has no way of verifying whether billing adjustments were actually

23   made or whether the submitted billing entries merely represented less-than-

24   precise time estimations. The court understands and appreciates Special

25   Counsel's concern about overbilling its clients. However, the more

26   appropriate billing practice, especially before the bankruptcy court, would

27

28

---

[2]The adjustments for each billing entry are provided for in Appendix A.

9

1   have been for Special Counsel to account for the entire time actually

2   expended for each billing entry and then to take a one-time, general

3   deduction or discount on the total fees requested in its Fee Application.

4   This way the court still has the opportunity to properly evaluate the actual

5   tasks performed by Special Counsel and the actual time expended for each

6   task, without having to do any guesswork.

7        Following the adjustments made and detailed in Appendix A, the

8   court finds that Special Counsel is entitled to $7,804.50 in fees for 36.3

9   billed hours at a rate of $215 an hour.  This figure represents a difference of

10  $2,580, or a roughly 25% decrease, from the originally requested amount of

11  $10,384.50.

12  **Conclusion.**

13       Based on the foregoing, the court approves Special Counsel's Fee

14  Application in part and denies it in part.  Special Counsel is entitled to

15  $7,804.50 in interim fees for the period between August 17 and December 7,

16  2011.

17       Dated: March ____8____, 2012

18

19                                        W. Richard Lee
                                          United States Bankruptcy Judge
20

21

22

23

24

25

26

27

28

**Appendix A.**

|    | Billing Entry (Slip ID, Date) | Stated Time (Hours) | Stated Amount ($) | Adjusted Time (Hours) | Adjusted Amount ($) |
|----|-------------------------------|---------------------|-------------------|-----------------------|---------------------|
| 01 | 269128, 08/17/11 | 1.00 | 215.00 | 0.60 | 129.00 |
| 02 | 269728, 08/18/11 | 2.00 | 430.00 | 1.60 | 344.00 |
| 03 | 269412, 08/19/11 | 0.50 | 107.50 | 0.10 | 21.50 |
| 04 | 275544, 08/23/11 | 0.50 | 107.50 | 0.10 | 21.50 |
| 05 | 269968, 08/24/11 | 2.00 | 430.00 | 1.60 | 344.00 |
| 06 | 270138, 08/25/11 | 3.00 | 645.00 | 2.60 | 559.00 |
| 07 | 275545, 08/26/11 | 1.00 | 215.00 | 0.60 | 129.00 |
| 08 | 275546, 08/31/11 | 0.50 | 107.50 | 0.10 | 21.50 |
| 09 | 270462, 09/01/11 | 1.00 | 215.00 | 0.60 | 129.00 |
| 10 | 275548, 09/14/11 | 0.50 | 107.50 | 0.10 | 21.50 |
| 11 | 271831, 09/15/11 | 2.50 | 537.50 | 2.10 | 451.50 |
| 12 | 275547, 09/16/11 | 0.50 | 107.50 | 0.10 | 21.50 |
| 13 | 271842, 09/16/11 | 1.00 | 215.00 | 0.60 | 129.00 |
| 14 | 271934, 09/19/11 | 2.00 | 430.00 | 1.60 | 344.00 |
| 15 | 272264, 09/21/11 | 2.00 | 430.00 | 1.60 | 344.00 |
| 16 | 272361, 09/22/11 | 1.50 | 322.50 | 1.10 | 236.50 |
| 17 | 272135, 09/23/11 | 2.00 | 430.00 | 1.60 | 344.00 |
| 18 | 272504, 09/28/11 | 4.00 | 860.00 | 3.60 | 774.00 |
| 19 | 272685, 09/29/11 | 2.00 | 430.00 | 1.60 | 344.00 |
| 20 | 272687, 09/29/11 | 3.00 | 645.00 | 2.60 | 559.00 |
| 21 | 275553, 09/30/11 | 2.00 | 430.00 | 1.60 | 344.00 |
| 22* | 275552, 09/30/11 | 2.20 | 473.00 | 2.20 | 473.00 |
| 23 | 275551, 09/30/11 | 2.50 | 537.50 | 2.10 | 451.50 |
| 24 | 275550, 09/30/11 | 0.50 | 107.50 | 0.10 | 21.50 |
| 25 | 272826, 10/03/11 | 1.00 | 215.00 | 0.60 | 129.00 |
| 26 | 272867, 10/04/11 | 1.50 | 322.50 | 1.10 | 236.50 |
| 27* | 275549, 10/28/11 | 0.60 | 129.00 | 0.60 | 129.00 |
| 28 | 274190, 10/28/11 | 1.00 | 215.00 | 0.60 | 129.00 |
| 29 | 275029, 11/14/11 | 0.50 | 107.50 | 0.10 | 21.50 |

| | | | | | |
|---|---|---|---|---|---|
| 30 | 275426, 11/18/11 | 0.50 | 107.50 | 0.10 | 21.50 |
| 31 | 275554, 12/06/11 | 2.00 | 430.00 | 1.60 | 344.00 |
| 32 | 275555, 12/07/11 | 1.50 | 322.50 | 1.10 | 236.50 |
| | | 48.30 Hours | $10,384.50 | 36.30 Hours | $7,804.50 |

*- denotes billing entries which the court has not adjusted.

Manuel R. & Maria J. Santos, Case No. 11-16468-B-11/DC No. DLF-1


Manuel R. Santos
Maria J. Santos
16283 18th Ave.
Lemoore, CA 93245

Riley C. Walter, Esq.
Attorney at Law
205 E. River Park Circle, Ste. 410
Fresno, CA 93720

Michael A. Dias, Esq.
Attorney at Law
502 W. Grangeville Blvd.
Hanford, CA 93230

Craig B. Fry, Esq.
Attorney at Law
P.O. Box 40012
Fresno, CA 93755-0012

Gregory Powell, Esq.
Attorney at Law
Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare St., Ste. 1401
Fresno, CA 93721